**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LISA LOU RUSSELL, | : | |
| | : | Case No. 2:15-cv-407 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court for consideration of the Commissioner's Objection to Magistrate Judge Kemp's December 18, 2015 **Report and Recommendation** (Doc. 19), recommending that this Court sustain Lisa Russell's Statement of Specific Errors (Doc. 12) and remand this case to the Commissioner for further proceedings under 42 U.S.C. § 405(g). Upon independent review by the Court, and for the reasons set forth below, the Commissioner's Objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

**I. BACKGROUND**

Lisa Russell applied for supplemental security income ("SSI") on June 6, 2011. She alleged that she became disabled on January 31, 1998, but later amended her date of disability to her filing date of June 6, 2011. After initial administrative denials of her application, an Administrative Law Judge ("ALJ") conducted a video hearing on June 6, 2013, and, on August 16, 2013, issued a decision denying her benefits application after finding that she was not disabled under Section 1614(a)(3)(A) of the Social Security Act.

1

In her decision denying benefits, the ALJ conducted the required five-step sequential analysis for disability-benefits claims.  *See* 20 C.F.R. § 416.920(a).[1]  At step one, the ALJ determined that Russell had not engaged in substantial gainful activity since her application date of June 6, 2011.  At step two, the ALJ found that Russell had the severe impairments of depression, anxiety, personality disorder, borderline intellectual functioning (BIF), and substance-abuse disorder.  At step three, however, the ALJ determined that Russell's impairments did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Supbart P, Appendix 1.  The ALJ's step-three finding—that Russell's impairments did not meet or equal a qualifying listed impairment (namely, the criteria set forth under Listing 12.05C)—forms the crux of this dispute.

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

Prior to reaching step four,[2] the ALJ found that Russell has the following residual functional capacity ("RFC"):

> [Russell] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is able to perform simple routine tasks involving simple, short instructions with no decision making, few workplace changes, no production requirements, no tandem tasks, no interaction with the general public, and occasional interaction with supervisors. She should not be required to read instructions, write reports, or perform math calculations.

(Admin. R., Doc. 9-2, at PageID 64). The ALJ also found that Russell had no past relevant work. Nevertheless, at step five, the ALJ determined that, based on Russell's age, education, work experience, and RFC, she could perform several jobs that exist in significant numbers in the national and regional economies, including working as a restaurant busser or laundry bagger. Consequently, the ALJ concluded that Russell was not entitled to benefits under the required five-step analysis.

The Appeals Council denied Russell's request for review of the ALJ's determination on December 5, 2014, thus rendering the ALJ's benefits-denial decision the Commissioner's final agency action. (*Id.* at PageID 49). Russell then filed suit in federal court, alleging in her Statement of Errors that the ALJ erred in her step-three analysis by finding that Russell's impairments failed to meet or equal the requirements of Listing 12.05C (intellectual ability). (Statement of Errors, Doc. 12, PageID 538-39 ("The ALJ erred when she failed to properly consider the evidence of Russell's valid I.Q. scores and deficits in adaptive functioning prior to age 22. . . . [T]he ALJ's explanation of these material findings were inadequate and remand of this case for further consideration of Listing 12.05C is appropriate.")).

---

[2] "Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and at step five when we evaluate your claim at these steps."  20 C.F.R. § 416.920(a)(4); *see Morgan v. Colvin*, 803 F.3d 773, 776 n.2 (5th Cir. 2015).

On December 18, 2015, the Magistrate Judge issued a Report and Recommendation, recommending that this Court sustain Russell's Statement of Errors by remanding the matter to the Commissioner for further review. (Doc. 19). The Magistrate Judge first noted that "[t]he ALJ's step three finding is not a model of clarity." (*Id.* at PageID 574). Even so, after parsing the ALJ's muddled finding, the Magistrate Judge concluded that further review was warranted because the ALJ's step-three finding was not supported by substantial evidence. The Commissioner then objected to the Magistrate Judge's Report and Recommendation. (Doc. 22). The relevant facts concerning Russell's mental impairments and how they compare to Listing 12.05C are thoroughly set forth in the Magistrate Judge's Report and Recommendation; facts that are relevant to this Court's decision will be incorporated into the analysis below.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

4

### III.  ANALYSIS

In her sole assignment of error, Russell argued that the ALJ committed reversible error in her step-three analysis regarding Listing 12.05C from 20 C.F.R. Pt. 404, Subpart P, App'x 1—the "intellectual ability listing." *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 534 (6th Cir. 2014).  Magistrate Judge Kemp sustained Russell's contention, finding that the ALJ's step-three finding regarding Listing 12.05C was confusing and, in any event, not supported by substantial evidence.  The Commissioner objects to the Magistrate Judge's conclusion, arguing that the ALJ had a reasonable basis for finding that Russell failed to satisfy the criteria from Listing 12.05C.  Accordingly, the Commissioner argues that court interference with the ALJ's decision would run counter to the substantial evidence standard.

### A.  The Requirements for Satisfying Listing 12.05C.

It makes most sense to begin with the requirements for satisfying Listing 12.05C.  Only then can the Court work backwards to examine the ALJ's finding under that provision and determine whether her finding was supported by substantial evidence.

Claimants seeking to qualify for disability benefits under Listing 12.05 must "satisf[y] the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria" from paragraphs A through D.  *Peterson*, 552 F. App'x at 534 (emphasis added).  In other words, to show that her impairment(s) meet Listing 12.05C for "intellectual disability," Russell must demonstrate that she had: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing an additional and significant work-related limitation of function." *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00A, 12.05C); *see also Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

### B. The ALJ's Determination Regarding Listing 12.05C.

In denying Russell's disability claim under Listing 12.05C, the ALJ stated, in full, as follows:

> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant was determined to have a learning disability, there is no evidence the claimant had intellectual disability or significant deficits in adaptive functioning prior to age 22 (Exhibit 10E). Although Dr. Sarver's testing indicated low IQ scores, medical evidence of record indicates average intelligence (Exhibits 3F and 6F, p. 7). Also the signature of a state agency medical consultant on Form SSA-831 is implicit recognition that the consultant has considered and ruled out a finding that a medical listing is equaled (Exhibits 2A and 4A). . . . No treating or examining physician has either offered an opinion or reported findings of listing level severity. In addition, the undersigned has carefully reviewed the criteria of the listed impairments in Appendix 1 and has not determined that the claimant's impairment [sic] do not meet the listing level criteria of any impairments in Appendix 1.

(Admin. R., Doc. 9-2, at PageID 63-64).

As Magistrate Judge Kemp correctly noted, this analysis "is not a model of clarity." (Doc. 19 at PageID 574). The first sentence of the ALJ's rationale, which incorporates both the criteria from Listing 12.05C *and* a potential finding that Russell failed to meet *any* of those criteria, flatly contradicts the record. Dr. Sarver, a clinical psychologist and neuropsychologist, evaluated Russell on July 20, 2011, at which point he administered "valid" IQ tests which scored her with an IQ of 68 (verbal), 56 (perceptual reasoning), 63 (working memory), and 65 (processing speed), yielding a full-scale IQ score of 57—which "places her . . . within the mentally retarded range." (Admin. R., Doc. 9-7, Page 311). The ALJ nowhere sought to discredit those tests. Moreover, the first sentence of the ALJ's rationale (if read broadly) contradicts her own findings that Russell had other severe impairments, including depression, anxiety, personality disorder, borderline intellectual functioning, and substance-abuse disorder.

6

Given these contradictions between the record evidence, the ALJ's own findings, and her statement in the first sentence of her Listing 12.05C analysis, this Court, like the Magistrate Judge, concludes as follows: The first sentence of the ALJ's analysis, quoted above, shows nothing more than the ALJ's finding that: (1) there are several criteria that must be met to establish disability under Listing 12.05C, and (2) Russell did not meet *all* of them.  Accordingly, the Court must turn to the remainder of the operative paragraph to determine *why* the ALJ denied Russell's claim.

This Court must look to the ALJ's decision with fresh eyes.  Having done so, however, the Court agrees with the Magistrate Judge that the best understanding of the ALJ's reasoning is that she found Russell failed to satisfy the criteria from Listing 12.05C for two reasons: (1) Russell did not, according to her school records (referenced as Exhibit 10E), have "intellectual disability or significant deficits in adaptive functioning prior to age 22"; and (2) no physician or state agency reviewer attested that Russell satisfied the criteria from Listing 12.05C. (*See* Doc. 19, PageID 576).  This Court, therefore, must examine both of those rationales to determine whether substantial evidence supports either of them.

### C.  The ALJ's Determination Lacks Substantial Evidence from the Record.

Upon reviewing the record anew, the Court concludes that the ALJ's determination, described above, lacks substantial evidence, at least as presently explained.  The school records contradict the ALJ's finding that Russell's intellectual disability and deficits in adaptive functioning did not manifest themselves prior to age twenty-two.  And the fact that no physician or state agency reviewer attested that Russell satisfied the criteria from Listing 12.05C lacks substantial evidence or a satisfactory explanation because the officials mentioned did not examine Russell's school records.

*1. Russell's School Records Contradict the ALJ's First Finding.*

Russell's school records contradict the ALJ's finding that "there is no evidence the claimant had intellectual disability or significant deficits in adaptive functioning prior to age 22." (*See* Admin. R., Doc. 9-2, at PageID 63 (citing Exhibit 10E [school records])). Those school records confirm that Russell dropped out of high school in Ninth Grade after failing to pass three times, both in a traditional high school setting and in a virtual learning setting. (*See* Admin. R., Doc. 9-6, PageID 280-336). Prior to dropping out, Russell's school placed her on an Individualized Education Program ("IEP") due to her qualification "for special education with a specific learning disability that effects [sic] her performance in all areas of academic achievement." (*Id.* at PageID 281). At the time, Russell could read and comprehend "below a third grade level" and was "only able to answer comprehension questions on the 3rd grade passage with 20% accuracy." (*Id.*). Although she could "write a sentence using vocabulary words at about the fifth to sixth grade level," she "did not begin sentences with a capital [letter] and did not use end punctuation." (*Id.*). As for math, Russell could only "add with regrouping and subtract without regrouping"—she could not, however, "subtract with regrouping," nor could she multiply, divide, or work with fractions. (*Id.*). When her IEP was drafted, Russell was earning failing grades in every class. (*Id.*). And before entering high school, Russell was suspended from school and removed from the bus numerous times for behavioral and safety problems, including violating school rules, being grossly defiant, and dangerously walking behind the bus after being warned not to on several occasions. (*Id.* at PageID 322-33). At one point, the Superintendent even filed a notice of intent to expel Russell from school due to her willful and persistent violation of school rules, though the Record does not indicate whether he ultimately expelled her. (*Id.* at PageID 332).

Put simply, Russell's school records suggest that she had "subaverage general intellectual functioning with deficits in adaptive functioning" that manifested before age twenty-two—thus satisfying the introductory paragraph from Listing 12.05C.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05C; *see Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (explaining that "adaptive skills limitations" include "[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, *social/interpersonal skills*, use of community resources, *self-direction*, *functional academic skills*, work, leisure, health, and *safety*" (emphasis added) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders Text Revision*, § 317 (4th ed. 2000))).

Where, as here, a claimant's school records "contain[] multiple documents and entries, many of which support that [the claimant] had intellectual and adaptive deficits at that time," the ALJ is "obliged to do more than simply cite the [school records] exhibit" as a basis for finding that the claimant failed to satisfy the diagnostic requirement from the introductory paragraph of Listing 12.05C.  *Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 415-16 (6th Cir. 2014) (per curiam) (reviewing school records which "support that [the claimant] was placed in special-education classes . . . had significant difficulties with reading, writing, and math . . . struggled with following directions and completing assignments . . . [and] did not cooperate with teachers or his peers").  Instead, "[u]nder these circumstances, a statement of 'the reasons or basis' for the material finding would include a statement of *which portions* of the exhibit the ALJ relied on and *why* they supported a finding that [the claimant] did not manifest the required deficits." *Id.* at 416 (emphasis added).  This "reasons requirement" forms both a substantive and procedural protection and is "necessary . . . to facilitate effective and meaningful judicial review."  *Id.* (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011)).

Here, the "reasons requirement" simply was not met. As in *Burbridge*, the ALJ merely stated, in a single sentence, that "there is no evidence the claimant had intellectual disability or significant deficits in adaptive functioning prior to age 22 (Exhibit 10E)." *Compare id.* at 415 ("The ALJ decided the material question whether [claimant] meets the requirements of this listed impairment with a single sentence: 'In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits 14E and 17F).'"). Without *some* explanation to support it, this was an impermissible inference to draw. Moreover, as in *Burbridge*, the Commissioner's attempt to square Russell's school records with a *later* psychologist's report, which did not explicitly diagnose Russell with mental retardation (but which did note that "[i]ntellectually, she is functioning within the mentally retarded range") prove unavailing, because Dr. Sarver did not have access to the school records in-question. *See id.* at 416 ("We note that the ALJ's analysis is not aided by any reliance on Dr. Sexton's evaluation because . . . [he] did not have [the claimant's] school records."). Under these circumstances, a remand for additional findings under Listing 12.05 is appropriate. *Id.*

2. *The ALJ's Second Finding Lacks Substantial Evidence or a Sufficient Explanation.*

For similar reasons, the ALJ's second finding—that no physician or state agency reviewer attested that Russell satisfied the criteria from Listing 12.05C—lacks substantial evidence or a sufficient explanation. As in *Burbridge*, the examiners (Dr. Sarver, Brandi Bumgardner, Tracy Zubler, and Kassandra Watt) "did not have [the claimant's] school records," and thus, "the ALJ's analysis is not aided by any reliance on [their] evaluation[s]." *See id.*; (*see also* Admin. R., Doc. 9-3, PageID 110-33 [Exhibits 1A-4A]; Admin. R., Doc. 9-7, PageID 359-69 [Dr. Sarver's Report]; Admin. R., Doc. 9-7, PageID 409-15 [Tri-County Mental Health and Counseling Services Adult Diagnostic Assessment]).

Moreover, the ALJ's decision "simply states, summarily and without explanation," that Russell's impairment does not satisfy Listing 12.05C because "no treating or examining physician has either offered an opinion or reported findings of listing level severity."  *See Taltoan v. Colvin*, No. 4:13CV2526, 2014 WL 5795561, at *10 (N.D. Ohio Nov. 6, 2014).  As in *Taltoan* and other lower court decisions from within this Circuit, "the Court finds this [statement] is insufficient to satisfy the ALJ's duty to discuss the evidence and provide an 'explained conclusion.'"  *Id.* at *12 (quoting *Reynolds*, 424 F. App'x at 416); *see also Jones v. Comm'r of Soc. Sec.*, No. 5:13-cv-02087, 2014 WL 4715727, at *11 (N.D. Ohio Sept. 22, 2014) (finding that ALJ's statement that "no treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment" was insufficient to allow the court to conduct meaningful review).  In the wake of *Reynolds* and *Burbridge*, "numerous district courts have vacated and remanded ALJ decisions" due to "the failure to conduct a meaningful step three analysis which evaluates the medical evidence [and other relevant records], compares it to the applicable listing, and provides an 'explained conclusion' as to why the claimant's impairments fail to meet or equal a listed impairment."  *See Taltoan*, 2014 WL 5795561, at *11 (collecting cases).  The same approach is warranted here.

Although the Commissioner argues that the ALJ's determination should be upheld because the record evidence elsewhere does not establish that Russell's impairment[s] satisfied the criteria for Listing 12.05C, "the ALJ included no such analysis in the decision," and this Court "cannot engage in *post hoc* rationalizations."  *Id.* at *12 ("[A]rguments [crafted by defense counsel] are of no consequences, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." (quotation omitted)); *accord Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009).

11

Accordingly, remand is necessary because the Court cannot determine whether the ALJ's conclusions—cursory as they were—find support from substantial evidence. *Kump v. Comm'r of Soc. Sec.*, No. 1:14CV2384, 2015 WL 7774303, at *9 & n.1 (N.D. Ohio Dec. 2, 2015) ("In sum, the decision does not allow the Court to follow the ALJ's reasoning with regard to the evidence. . . . Thus, the Court is unable to conduct a meaningful review, and remand is warranted so that the ALJ may provide a more thorough analysis."); *Feliciano v. Colvin*, No. 3:14-01449, 2015 WL 5124046, at *11 (M.D. Tenn. Sept. 1, 2015) (finding that "more appropriate course" was to vacate and remand the case "for a discussion of the evidence and an explanation of reasoning" behind benefits denial), *Rep. & Recommendation adopted sub nom. Feliciano v. Soc. Admin.*, No. 3:14-011449, 2015 WL 567894, at *1 (M.D. Tenn. Sept. 23, 2015). The Court notes that a full review and analysis "may not result in a disability finding," but without a meaningful explanation, which considers Russell's school records, "this possibility cannot be conclusively determined." *See Kump*, 2015 WL 7774303, at *9 n.1 (cautioning against treating the remand decision as "an advisory opinion in favor of a finding of disability on remand).

## IV.  CONCLUSION

For these reasons, this Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Kemp's **Report and Recommendation** and sustains Russell's statement of errors. Thus, the Commissioner's Objection is **OVERRULED**. This action is hereby **REMANDED** to the Commissioner for reconsideration in accordance with this Opinion and Order, pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS SO ORDERED.**

                                         **/s/ Algenon L. Marbley**
                                         **ALGENON L. MARBLEY**
                                         **UNITED STATES DISTRICT JUDGE**

**DATED:  March 22, 2016**